(No. 38583.—

The People of the State of Illinois, Appellee, *vs.* June Sikora, Appellant.

*Opinion filed January 21, 1965.—Rehearing denied March 17, 1965.*

PAUL C. ROSS, of Chicago, (HARRY S. WEBER, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and GEORGE W. KENNY, Assistant Attorneys General, and ELMER C. KISSANE and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, June Sikora, was indicted by the grand jury of Cook County for the offense of obscenity, committed by the sale of obscene books. She pleaded not guilty and waived a jury trial. She was tried before a judge, found guilty and fined $1000, and now appeals directly to this court. Questions arising under the constitutions of the State and of the United States are involved.

Before turning to the defendant's contentions that neither the obscene quality of the books in question nor her knowledge of their contents was sufficiently proved, we shall consider first her contentions that the statutory definition of obscenity, as well as certain statutory provisions relating to the admissibility of evidence, are unconstitu-

tional. The statute defines obscenity as follows: "A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, *and* if it goes substantially beyond customary limits of candor in description or representation of such matters." Ill. Rev. Stat. 1963, chap. 38, par. 11—20. (Italics supplied.)

In the face of this language, it is the defendant's position that "This section states that something would be obscene (1) if a thing as [*sic*] considered as a whole its predominant appeal is to prurient interest in nudity, sex or excretion or (2) goes substantially beyond customary limits of candor." This statement ignores the fact that the statute uses the conjunctive "and" rather than the disjunctive "or." The defendant advances no reasons to support a disjunctive construction. Apparently her argument rests upon the fact that the Model Penal Code of the American Law Institute, in its proposed official draft, underscored the conjunctive purpose by changing the simple but explicit "and", which appeared in earlier drafts, to read "and if in addition." The comments to the proposed official draft of the Model Penal Code make it clear that no change in substance was intended. (Model Penal Code, Tentative Draft No. 6, p. 1; Proposed Official Draft, 237, 240.) Moreover, the joint committee which drafted the proposed Illinois Criminal Code of 1961 stated in its comments: "Under subsection (b) material must appeal to sexual interest (or interest in nudity or excretion), but it must also go beyond customary limits of candor in the description in such things." Tentative Final Draft of the Proposed Illinois Criminal Code of 1961, p. 275.

The defendant also contends that paragraphs (c)(1), (c)(2), (c)(3), (c)(4) and (c)(5) of section 11—20 of the Criminal Code of 1961, which specify kinds of evidence that are admissible in an obscenity prosecution, are unconstitutional. These provisions are:

"(c) Interpretation of Evidence

"Obscenity shall be judged with reference to ordinary adults, except that it shall be judged with reference to children or other specially susceptible audience if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience. In any prosecution for an offense under this Section evidence shall be admissible to show:

"(1) The character of the audience for which the material was designed or to which it was directed;

"(2) What the predominant appeal of the material would be for ordinary adults or a special audience, and what effect, if any, it would probably have on the behavior of such people;

"(3) The artistic, literary, scientific, educational or other merits of the material, or absence thereof;

"(4) The degree, if any, of public acceptance of the material in this State;

"(5) Appeal to prurient interest, or obscene [*sic*. probably should read 'absence.' See par. (3) above.] thereof, in advertising or other promotion of the material; * *  *."
Ill. Rev. Stat. 1963, chap. 38, par. 11—20.

No evidence was received or offered which would suggest that the books in question were addressed to a special audience, and so no issue arising under paragraph (c)(1) or (c)(2) is presented in this case. No evidence was reviewed or offered under paragraph (c)(3), but this paragraph presents a different problem, since under *Roth* v. *United States,* 354 U.S. 476, 484-85, 1 L. ed. 2d 1498, and *Jacobellis* v. *United States,* 378 U.S. 184, 191, 12 L. ed. 2d 793, the social importance of the material in question is significant in any obscenity case.

The defendant contends that paragraph (c)(3) "is unconstitutional because it attempts to set out a rule for a particular type of evidence which is irrelevant in nature and the proof or lack of proof of which would have no

bearing on the determination of whether or not the allegedly obscene material is obscene." This contention is unsound. Evidence of the presence or absence of "artistic, literary, scientific, educational or other merits" of the material in question is relevant because, as pointed out in the opinion of Mr. Justice Brennan in the *Jacobellis* case "obscenity is excluded from the constitutional protection only because it is 'utterly without redeeming social importance,' * * *. It follows that material dealing with sex in a manner that advocates ideas, *Kingsley Int'l Pictures Corp.* v. *Regents,* 360 U.S. 684, or that has literary or scientific or artistic value or any other form of social importance, may not be branded as obscenity and denied the constitutional protection." (378 U.S. at 191.) Not only is evidence admissible as to the social importance of the allegedly obscene materials; a determination as to the presence or absence of social importance is essential to a judgment. And if, as in this case, no evidence bearing upon that issue is offered, the determination must be made from an examination of the material in question.

Paragraph (c)(4) relates to the admissibility of evidence as to "the degree, if any, of public acceptance of the material in this State." The comparable provision of the Model Penal Code refers to the admissibility of evidence to show "the degree of public acceptance of the material in the United States" and the comments state that this kind of evidence is relevant "to show that the material went beyond 'customary limits of candor.' " (Model Penal Code, Proposed Official Draft, p. 239; Tentative Draft No. 6, p. 44.) Whether a State standard, which paragraph (c)(4) appears to sanction, would be constitutional has not yet been determined by the Supreme Court. Some of the justices would clearly favor a national standard; others would clearly favor a local standard; and still others adhere to an approach to first amendment problems that has made it un-

necessary for them to consider the question. We need not now resolve this issue, for in the case before us no evidence of any local standard or of statewide acceptance was offered or received, and the trial judge appraised the books in question in terms of "contemporary community standards in the United States today."

Evidence was received under paragraph (c)(5), concerning the appeal "to prurient interest, or obscene [absence] thereof, in advertising or other promotion of the material." But this evidence, which will be described, was clearly admissible upon the issue of scienter. Whether or not it was admissible as tending to show the obscene character of the books themselves is therefore of no consequence. McCormick on Evidence, sec. 59.

The defendant's contention that her knowledge of the obscene quality of the books was not established requires a review of the evidence on that issue. Most of the evidence was stipulated. The defendant was one of three partners who owned Selective Paperbacks, a retail bookseller, and she managed the business. Selective solicited orders by sending out descriptive flyers. One flyer listing "Original Nightstand Books" announced "NO orders sent through the U.S. Mail." Another stated, "27 Newstand books not listed on this sheet have been banned from the mails—if, on quantity orders of 25 or more, you would like us to substitute we will up to 10 per order—our choice—sorry we cannot list them by name." Other flyers promised that books purchased would arrive in unmarked wrappers. The advertising material frequently contained brief descriptions of the books which repeated such terms as "sex-hungry," "passionate", "torrid love", "lascivious", "lustful", "orgiastic." Among the defendant's duties was the preparation of these flyers. She also kept the books of the partnership, opened the partnership bank account and was one of the two persons authorized to draw checks. She arranged for a post-office box

in the name of Selective Paperbacks, and opened an account in that name with United Parcel Service of Chicago for the delivery of books sold by Selective.

Just prior to September 5, 1962, one Frank Giertuga sent a written order for certain paperback books to Selective Paperbacks. This order was received by the defendant. It was stipulated: "The defendant Sikora, in response to the written order of Giertuga, sold and provided to the said Giertuga, the books so ordered including the books named in this indictment and in evidence, in return for a payment of money by the said Giertuga to defendant Sikora, and the defendant Sikora then deposited the said books, including the books named in this indictment and in evidence, with United Parcel Company, Chicago, Illinois, and said books, including the books named in this indictment and in evidence, were received by the said Giertuga in Chicago, Illinois from United Parcel Company on September 5, 1962 * * *."

Defendant testified that she had never seen the three books in question; that books were ordinarily ordered by number and that when an order was received she would prepare a label which was sent along with the number to the shipping room, where the order was filled. She testified that she never filled or supervised the filling of a single order.

Despite this testimony the trial judge found that there was scienter, and in our opinion his conclusion has ample support in the record. Direct evidence that the defendant saw or read the books is not required. "Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he is aware of what a book contained, despite his denial." (*Smith v. California,* 361 U.S. 147, 154 (1959), 4 L. ed. 2d 205. The defendant was not an innocent clerk. She was the managing partner of an enterprise that specialized in books of a salacious character. She testified that most of the books

sold by Selective dealt with "sex in a contemporary nature." She prepared advertising circulars describing these books, and she knew that some of the books sold by Selective from its specialized stock were not to be sent through the mail, "probably", as she testified, "because they had been declared obscene." Selective's method of doing business could reasonably be regarded as having been devised to insulate the managing partner from scienter. A bookseller cannot "exculpate himself by studious avoidance of knowledge about its [a book's] contents, * * *." *Smith* v. *California,* 361 U.S. at 162, separate opinion of Frankfurter, J.

Scienter is required because without it a bookseller could be safe only if he engaged in self-censorship, which might impede the distribution of nonobscene books. But Selective was not a general bookseller. It specialized in a particular type of books, and it had an obvious interest in knowing what kind of books it was offering for sale. As to this bookseller, the danger of "timidity in the face of his absolute criminal liability" (*Smith* v. *California,* 361 U.S. at 154) was at most minimal. Selective apparently regarded its open evasion of the postal laws as an affirmative asset, and its advertising circulars show that there was no danger that it would engage in self-censorship. The trial judge did not err in holding on this record that scienter was established.

We come, then, to consider whether or not the books that the defendant sold are obscene. Despite the difficulties that it has encountered in arriving at satisfactory standards for determining what is obscene, the Supreme Court of the United States has made it clear that the distribution of obscene material may be punished criminally. (*Roth* v. *United States, Alberts* v. *California,* 354 U.S. 476.) The General Assembly has prohibited the sale or distribution of obscenity. We have examined the three books named in the indictment and we have concluded that they are obscene.

"Lust Campus" by Andrew Shaw is a story of sexual adventures on a college campus "where even members of

268

the faculty taught sin and evil." The book describes homosexuals "necking" on a public beach; mutual masturbation; self-fondling; a circle of persons engaged in oral-genital contact; rape; intercourse; lesbian intercourse; cunnilingus and flagellation; flagellation with barbed wire; an abortion with red-hot barbed wire; masturbation with a mirror reflection, and a transvestite episode.

"Passion Bride" by John Dexter described curricular and extracurricular sexual episodes that take place during a honeymoon on the French Riviera. The book describes masturbation; intercourse; a party between an old man and three prostitutes; attempted intercourse in a bath; lesbian foreplay; flagellation; rape ending in the death of the female from a broken back and intercourse ending in the broken back of the male participant.

"Crossroads of Lust" by Andrew Shaw describes the sexual adventures of various persons in a small town. There are numerous descriptions of intercourse; lesbian intercourse; oral-genital contact; and rape. A woman stabs a man in the course of intercourse, completing the act after he is dead. There are also three voyeurism scenes, two of which involve watching lesbian love play. The third is characterized by sadism and masochism.

The sole appeal of these books is to the prurient interest, and the stimulation of that interest is clearly the author's intention. The aberrational conduct portrayed can appeal only to a shameful and morbid interest in nudity and sex. The kind of scenes that are described and the detail of description go beyond the customary limits of candor in this country. The defendant does not contend that any of these books has literary or artistic merit. No one of them can be said to represent a serious attempt to discuss any problem that confronts society. They are discussions of sex and perversion, almost totally unrelated to anything else. Such plot and characterization as they contain serve as transitions from one sexual episode, normal or abnormal, to another.

It is not enough, in our opinion, to say that they are escapistic, and so serve a social function. Without their obscenity they would interest no one and would perform no function. All obscenity is essentially escapistic; it can not be allowed to justify itself on that basis.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*