**MOVIES, INC., an Illinois corporation, et al., Plaintiffs,**

**v.**

**James CONLISK, individually and as Superintendent of Police of the City of Chicago, et al., Defendants.**

**Leo WEINTRAUB and Rene Nawodylo, Plaintiffs,**

**v.**

**William J. SCOTT, individually and as Attorney General of the State of Illinois, et al., Defendants.**

**Nos. 70 C 2051, 70 C 1235.**

United States District Court, N. D. Illinois, E. D.

July 7, 1971.

Patrick A. Tuite, Chicago, Ill., for Movies, Inc. and others.

Edward V. Hanrahan, State's Atty., and Richard L. Curry, Corp. Counsel, Chicago, Ill., for Conlisk and others.

David Goldberger, American Civil Liberties Union, Chicago, Ill., for Weintraub and Nawodylo.

William J. Scott, Atty. Gen. of Ill., Edward V. Hanrahan, State's Atty., and Richard L. Curry, Corp. Counsel, Chicago, Ill., for William J. Scott and others.

Before PELL, Circuit Judge, MAROVITZ and LYNCH, District Judges.

## MEMORANDUM OF DECISION

LYNCH, District Judge.

The plaintiffs, Rene Nawodylo and Leo Weintraub, filed the complaint in No. 70 C 1235 seeking declaratory and injunctive relief from this Court. The relief requested contemplated an attack on constitutional grounds of a statute of statewide application. Accordingly, pursuant to 28 U.S.C. § 2281 and 28 U.S.C. § 2284, a three-judge Court was requested and subsequently convened. The plaintiffs, Movies, Inc., et al. filed the complaint in No. 70 C 2051 seeking both injunctive and declaratory relief from the same state law attacked in No. 70 C 1235. The matters were consolidated for argument because of the similarity of the causes.

The central thread of both complaints is a challenge to 38 Ill.Rev.Stat. § 11–20 (Appendix 1), the Illinois law defining and regulating obscenity. All plaintiffs contend that the law is vague and overbroad; they contend that it permits a conviction without a proper showing of *scienter;* lastly they contend that it is inimical to rights secured by the first amendment of the United States Constitution because it does not require a prior adversary hearing. Additionally, plaintiffs in No. 70 C 1235 challenge Chicago's obscenity ordinance, § 192.9, Municipal Code of Chicago (Appendix 2).

In both matters action was begun in this court after the State of Illinois had commenced several criminal proceedings

for violation of Ill.Rev.Stat., Ch. 38, § 11–20 against each of the plaintiffs in No. 70 C 1235. Similar charges are pending against some of the plaintiffs in No. 70 C 2051.

■ Recent decisions of the United States Supreme Court have circumscribed the jurisdiction of a three-judge court to entertain constitutional challenges to state criminal statutes where criminal proceedings pursuant to those statutes are pending at the time of filing the complaint in federal court. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L. Ed.2d 781; Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792. This Court believes these rulings compel different treatment of the pending matters. Accordingly, it will be necessary to discuss them separately.

The complaint in *Movies, Inc.,* et al. is brought by certain individuals who were arrested for showing a film that was judged obscene after a hearing held by a state court magistrate. The plaintiffs exhibited the film after it was adjudged obscene. Subsequently warrants were issued for their arrest and at the time of their arrest certain of the defendants seized the film, Pornography-Copenhagen '70. The arrests and seizure are currently on appeal to the Supreme Court of the State of Illinois. During the pendency of that appeal those individuals who were arrested brought this action. They were joined by certain corporate plaintiffs who own the theatres at which the film was shown. The proceedings here also seek to protect the rights of one Janice Mooney who purports to represent a class of individuals who would view Pornography-Copenhagen '70 were it available.

As noted above the Supreme Court recently decided a series of cases that redrew the perimeters of a federal court's jurisdiction when a court is asked to interfere with pending state court criminal matters. *Younger* v. *Harris, supra, Perez* v. *Ledesma, supra.*

[A] federal court must not, save in exceptional and extremely limited circumstances, intervene by way of either injunction or declaration in an existing state criminal prosecution. Such circumstances exist only when there is a threat of irreparable injury "both great and immediate." A threat of this nature might be shown if the state criminal statute in question were patently and flagrantly unconstitutional on its face, Younger v. Harris [ante] [401 U.S.], at 53 [91 S.Ct., at 755]; cf. Evers v. Dwyer, 358 U.S. 202 [79 S.Ct. 178, 3 L.Ed.2d 222], or if there has been bad faith and harassment—official lawlessness—in a statute's enforcement, Younger v. Harris [ante, 401 U.S.], at 47–49 [91 S.Ct. at 752–753]. In such circumstances the reasons of policy for deferring to state adjudication are outweighed by the injury flowing from the very bringing of the state proceedings, by the perversion of the very process which is supposed to provide vindication, and by the need for speedy and effective action to protect federal rights. Cf. George v. Rachel, 384 U.S. 780 [86 S.Ct. 1783, 16 L.Ed. 2d 925]. *Younger* v. *Harris, supra,* 401 U.S., at 56, 91 S.Ct. at 757 (Stewart, J., concurring).

In *Perez* v. *Ledesma, supra,* the Supreme Court articulated the standard that controls this court's intervention with a pending state court prosecution. "Only in case of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." 401 U. S. 82, 84, 91 S.Ct. 674, 677. In *Movies, Inc.,* there is no allegation of harassment or bad faith prosecution. Nor does there appear to be any other extraordinary circumstances justifying federal injunctive relief. Indeed the sit-

uation here appears closely analogous to that which existed in *Perez v. Ledesma, supra.*

In *Perez* the Supreme Court reviewed the holding of a three-judge court that declared a Louisiana statute permitting the seizure of allegedly obscene material, without a prior adversary hearing on the issue of obscenity, violative of rights secured by the first amendment. Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La.1969), *rev'd, sub nom. Perez* v. *Ledesma, supra.* The lower court was asked to enjoin pending state criminal proceedings for alleged violations of the Louisiana obscenity law. The lower court did not enjoin the state criminal proceedings but did suppress certain material seized pursuant to the arrest of those individuals being prosecuted. The result of the order to suppress was a termination of the state court proceedings. The Supreme Court reversed the lower court and held that it was improper for the federal court to interfere with the state court proceedings. Further, the Supreme Court noted that any alleged constitutional deficiency in the state court proceedings could properly be raised and disposed of in the state tribunals.

◼ Applying the holding of *Perez* to the matters raised in *Movies, Inc.,* it is apparent that the complaint must be dismissed. The thrust of the complaint and the relief requested would require this court to interject itself into matters currently before the courts of Illinois. It was precisely this type of interference that was proscribed in *Perez, supra.* Further, the complaint in *Movies, Inc.,* contains no allegation of bad faith, enforcement or harassment upon which this court might predicate its jurisdiction. Accordingly, the cause in No. 70 C 2051 is dismissed.

◼ Turning next to the complaint in No. 70 C 1235 the court is faced with a somewhat different situation. Both Weintraub and Nawodylo have been the subjects of frequent arrests by various state and local enforcement officials for sale of allegedly obscene material. Further, the plaintiffs in this matter assert that the enforcement officials are acting in bad faith with an intention to harass. Indeed, the single district judge to whom this matter was originally assigned found that the pattern of arrests constituted an attempt to harass and accordingly entered a temporary injunction that subsequently was dissolved. Thus, in No. 70 C 1235 the allegations of the complaint appear to assert sufficient facts to permit this court to entertain jurisdiction of the matter without contravening the directions contained in *Younger,* and its companion cases, *supra.* We note in passing that we are not determining that harassment or bad faith prosecution in fact exists in this matter. We hold only that the allegations of harassment coupled with the showing of frequent arrests of both plaintiffs is sufficient to bridge the gap in this court's jurisdiction created by *Younger.* Thus, assuming that we enjoy the rights to interfere with state criminal proceedings where there are allegations of harassment coupled with some factual data to support those allegations we turn to the constitutional challenge of the Illinois obscenity laws.

The plaintiffs' challenge to the constitutionality of Ill.Rev.Stat., Ch. 38, § 11–20 proceeds along several avenues. Plaintiff's most ambitious contention strikes at the right of the state to regulate obscene material, a right long recognized. Roth v. United States; Alberts v. California, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. The predicate for plaintiff's assertion is found in the holding of Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 wherein the Supreme Court determined that the first and fourteenth amendments prohibit making mere private possession of obscene material a crime. The plaintiffs argue that since the state cannot prohibit private possession of obscene material, *a fortiori* the state cannot prohibit the sale that placed the individual in possession of that material. The plaintiffs' assertion is contrary to language in

*Stanley* itself. In deciding *Stanley* the Supreme Court clearly reaffirmed the right of the state to regulate obscene material. 394 U.S. 557, 578, 89 S.Ct. 1243. Additionally, the merit of plaintiffs' argument is foreclosed by United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971). *Reidel* was indicted for using the mails for distribution of obscene material. 18 U.S.C. § 1461. The District Court, relying on *Stanley*, declared the statute unconstitutional and dismissed the indictment. The Supreme Court reversed noting:

> The District Court gave Stanley too wide a sweep. To extrapolate from Stanley's right to have and peruse obscene material in the privacy of his own home a First Amendment right in Reidel to sell it to him would effectively scuttle Roth, the precise result that the Stanley opinion abjured. Whatever the scope of the "right to receive" referred to in Stanley, it is not so broad as to immunize the dealings in obscenity in which Reidel engaged here—dealings which Roth held unprotected by the First Amendment. 402 U.S. 351, 355, 91 S.Ct. 1410, 1412.

■ Since the rights of a state to regulate obscenity within its borders are no less narrow than the right of the federal government, *Roth-Alberts, supra,* we determine that *Stanley* does not effect the right of the state to regulate the sale of allegedly obscene material.

Plaintiffs also contend that Ill.Rev. Stat., Ch. 38 § 11–20 does not properly define obscenity. Plaintiffs assert that the definition is vague and overbroad. In *Roth-Alberts, supra,* the Supreme Court defined obscene material as those things that "to the average person, applying contemporary community standards the dominant theme of the material taken as a whole appeals to prurient interest." 354 U.S. 476, 489, 77 S.Ct. 1304, 1311. Further, the court noted that obscene material is not protected by the first amendment because "implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance." 354 U.S. 476, 484, 77 S.Ct. 1304, 1309.

The three elements of obscenity suggested in *Roth-Alberts* were codified in A Book Named John Cleland's Memoirs of a Woman of Pleasure, et al. v. Attorney General of Massachusetts, 383 U. S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1. In *Memoirs* it was established that proscription of material as obscene was permissible only when three elements coalesced.

> (a) the dominant theme of the material taken as a whole appeals to prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value. 383 U.S. 413, 418, 86 S.Ct. 975, 977.

Each of these three tests is mandatory and must be applied with equal weight.

Illinois has incorporated into its law regulating obscenity a statutory definition that adequately treats the first two tests noted in *Memoirs, supra,* but has not included in that definition a statement that obscenity must be utterly without redeeming social value. (See Appendix 1) The plaintiffs assert that this omission is fatal to the definition and accordingly so infects the statute with invalidity that the entire statutory scheme must fall.

While the language of the Illinois statute does not incorporate the redeeming social value test, that test is added to the statute by judicial gloss. In City of Chicago v. Kimmel, 31 Ill.2d 202, 201 N.E.2d 386 (1964) the Illinois Supreme Court reviewed the same ordinance of the City of Chicago challenged here. The City ordinance does not contain an utterly without redeeming social value test. Notwithstanding the Supreme Court of Illinois held the ordinance valid. However, while so holding

the court reversed a conviction for violation of the ordinance stating:

> [W]e are unimpressed with the literary merit of the works before us, we cannot say that they "go substantially beyond customary limits of candor in descriptions or representation of such matters," or that they are "utterly without redeeming social importance." We accordingly hold that the jury improperly found the books to be obscene. 201 N.E.2d 386, 390.

Thus, the Illinois Supreme Court both acknowledges and applies the tripartite test contained in *Memoirs, supra.* See City of Blue Island v. DeVilbiss, 41 Ill. 2d 135, 242 N.E.2d 761 (1969). City of Chicago v. Geraci, 46 Ill.2d 576, 264 N. E.2d 153 (1970).

In People of State of Illinois v. Sikora, 32 Ill.2d 270, 204 N.E.2d 768 (1965) the Illinois Supreme Court reviewed the conviction of a defendant charged under a predecessor of the current Illinois obscenity law, which defined obscenity as it is currently defined in Illinois law. In passing upon an evidentiary standard in the statute that permitted evidence showing the literary, scientific, artistic, educational or other merit of the material, the Illinois Supreme Court stated:

> Not only is evidence admissible as to the social importance of the alleged obscene materials, a determination as to the presence or absence of social importance is essential to a judgment. And if, as in this case, no evidence bearing upon that issue is offered, the determination must be made from an examination of the material in question. 204 N.E.2d 768, 770–771.

It is apparent to this court that a conviction for obscenity in the courts of Illinois will necessarily require a determination that the offending material is utterly without redeeming social value. The statute has been authoritatively construed by the highest court in this State as requiring such a determination. The question remains as to whether that construction will save the provisions.

Several three-judge courts have reviewed state statutes similar to Illinois; each was challenged on the grounds that the definition of obscenity contained therein was impermissibly vague. Those courts, with one exception have found that the challenged statutes pass constitutional muster. In *Delta Book Distributors, supra,* a three-judge district court determined that a Louisiana statute, similar to Illinois', was constitutional if judicially interpreted and applied in light of the constitutional requirements set forth in *Memoirs, supra.* Other three-judge courts have upheld statutory definitions that did not contain all the elements of the tripartite test. Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802 (M.D.Ala. 1969); Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky.1968). In Great Speckled Bird v. Stynchcombe, 298 F.Supp. 1291 (N.D.Georgia 1969), a three-judge court held that the supremacy of the United States Constitution grafted these three elements to Georgia law, and sustained Georgia's obscenity law on that ground. However, Stein v. Batchelor, 300 F.Supp. 602 (D.C.N.D. Tex.1969), *rev'd on other grounds* Dyson v. Stein, *supra,* overturned a state statute that did not define obscenity as being material utterly without redeeming social value. The *Stein* court placed significant emphasis on the fact that no Texas court had rendered an authoritative limiting construction of the challenged statute.

■ There is no novelty in relying on authoritative construction to save deficient statutory provisions. In Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56, the Supreme Court relied upon authoritative state court construction to save a New York statute lacking a proper scienter element. In Friedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 the Supreme Court struck down Maryland's censorship provisions. However, in doing so the court noted:

> The teaching of our cases is that, because only a judicial determination in

an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. (cites omitted) To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. 380 U.S. 51, 58–59, 85 S.Ct. 734, 739. Similarly the Supreme Court itself has remedied federal statutory provisions through authoritative construction. United States v. Thirty Seven [37] Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). In light of the foregoing we hold that Ill.Rev.Stat. Ch. 38, § 11–20 is constitutional as construed by the Illinois courts.

■ We intimate no decision on the constitutionality of § 192.9, Municipal Code of Chicago. The challenge to that ordinance is not properly before this court. Accordingly, that matter is returned to the single district court judge. See *Perez* v. *Louisiana, supra.*

Plaintiffs second challenge attacks the Illinois statute on the ground that it does not contain the requisite element of scienter. The plaintiffs attack only that portion of the statute that permits a conviction when a person recklessly fails to exercise reasonable inspection which would disclose the content of the allegedly obscene material (See Appendix 1).

The leading decision on the required element of knowledge in a criminal conviction for obscenity is Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed. 2d 205. In reviewing the relationship of scienter to first amendment freedoms the court concluded:

By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents,

and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature. 361 U.S. 147, 153, 80 S.Ct. 215, 218.

But the statute here under review does not dispense with any requirement of knowledge, nor does it mandate inspection. The question is whether any proof less than that of actual knowledge, whether proved directly or constructively, as obviously required by the first clause of the scienter portion of the Illinois statute, will suffice.

To determine whether the alternative "recklessly failing to exercise reasonable inspection which would have disclosed the nature or content" is sufficient, we return to *Smith, supra.*

While the Court refrained from laying down precise guidelines, the Court's language nevertheless reflects to us, as it no doubt did to the Illinois legislature, that statutory standards of the requisite mental element are conceivably less than actual knowledge, which would not impose a restriction upon the distribution of constitutionally protected as well as obscene literature.

"We need not and most definitely do not pass today on what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock . . . whether there might be circumstances under which the State constitutionally might require that a bookseller investigate further, or might put on him the burden of explaining why he did not . . ." *Smith* v. *California, supra,* at p. 154, 80 S.Ct. at p. 219.

Our reading of the Court's language is fortified by the concurring opinion of Mr. Justice Frankfurter wherein he states:

"No less obviously, the Court does not hold that a bookseller who insulates himself against knowledge about an

offending book is thereby free to maintain an emporium for smut." Id., p. 161, 80 S.Ct. p. 223.

■ We know from Webster, as would a bookseller, the "reckless" connotation of "utterly heedless". We find no inhibiting effect on first amendment principles in the alternative scienter provision of the Illinois statute, for it is applicable only to him with knowledge or in the alternative to him who is heedless of the obvious. In either event, there must be proof beyond a reasonable doubt of this important element.

Lastly we are asked to declare the statute unconstitutional because it does not require an adversary hearing in order to determine obscenity prior to an arrest for a violation of Ill.Rev.Stat. Ch. 38, § 11–20. There is no requirement in the statute that such a hearing be held.

There is a little doubt that as a matter of both law and fact there is a thin separation between material that is obscene and that which enjoys first amendment protection. *See* Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584. Because of this thin line the courts must be certain that the process employed to restrict obscene material does not sweep protected material into the ash heap along with its repugnant unprotected counterpart. In order to insure adequate protection of non-obscene material, a standard has evolved requiring that prior to any seizure of publications or other communicative material there must be a judicial determination of the materials' obscenity. Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L. Ed.2d 1313; A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809; Marcus v. Search Warrants, 367 U.S. 717, 81 S. Ct. 1708, 6 L.Ed.2d 1127; Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968).

Plaintiffs here have been arrested approximately fourteen to twenty times in a time space of approximately one year. Each of the arrests was made with the benefit of a warrant. It appears that the warrant issued on the strength of testimony of the officer who entered plaintiff's store and purchased one or more copies of the plaintiff's material. Presumably the warrant also issued on the strength of an independent judicial review of the purchased material. In *Books* v. *Kansas, supra,* a procedure similar to the one now before us was found to be "constitutionally insufficient." 378 U.S. 205, 208, 84 S.Ct. 1723. There, a judge was given representative copies of certain books. He perused the books and subsequently issued an order for seizure of those books and those of their ilk. The Supreme Court reviewed the seizure and held:

"It is our view that since the warrant here authorized the sheriff to seize all copies of the specified titles, and since P-K was not afforded a hearing on the question of the obscenity *even of the seven novels before the warrant issued, the procedure was likewise constitutionally deficient.* 378 U.S. 205, 208, 84 S.Ct. 1723, 1725.

The essential predicate relied upon by the Court in reaching this conclusion was an unwillingness to inhibit the circulation of material that was constitutionally protected. Since the seizure would remove from circulation all copies of the designated books prior to a proper determination of obscenity the Court found the seizures improper.

■ It requires no extrapolation to conclude that prior to the gross removal of any communicative material from the mercantile main stream an adversary hearing on the issue of obscenity must be held and the material judicially determined obscene. See *Metzger* v. *Pearcy, supra.*

Plaintiffs argue that the holdings referred to above require that prior to any state action in any way interfering with the sale of their material, a judicial determination of obscenity must be made. We do not agree. Those cases which mandate a prior hearing are cases factually distinct from that before us now. It is true that no movies may be seized

without benefit of prior hearing. *Lee Art, supra.* Neither may books be seized without a hearing. *Books, supra.* But here we are not presented with seizures.

The arrests here do not circumscribe the right of the seller to continue to sell the allegedly offending material during the pendency of the state criminal proceedings. He may continue to do so. Admittedly continued sale of material that has once precipitated arrest requires a certain temerity. And to the extent that a bookseller fears further prosecution for continued sale of that same book there is a prior restraint on his conduct. But as Mr. Justice Frankfurter noted:

> The phrase "prior restraint" is not a self-wielding sword. Nor can it serve as a talismantic test . . . "What is needed," writes Professor Paul A. Fruend, "is a pragmatic assessment of its operation in the particular circumstances. The generalization that prior restraint is particularly obnoxious in civil liberties cases must yield to more particularistic analysis." (cite omitted). Kingsley Books v. Brown, 354 U.S. 436, 441–442, 77 S.Ct. 1325, 1328, 1 L.Ed.2d 1469.

■ It is our opinion that the prior restraint placed upon an individual who has been subject to one arrest for the sale of one publication is not offensive to rights secured by the first amendment. In *Roth-Alberts* the United States Supreme Court approved a state statutory scheme that imposed criminal penalties for disseminating obscene material. The United States Supreme Court upheld the state statute with no mention of a need for a prior adversary hearing. See *Kingsley Books, supra.* Accordingly, we hold that in the limited situation presented here there is no reason for prior hearing as required by *Books* v. *Kansas* and its progeny, and the Illinois statute has not been unconstitutionally applied to these plaintiffs.

Further, for reasons mentioned above we find no constitutional defect in the statute on its face traceable to the absence of a prior adversary hearing in those circumstances where it is required. Accordingly, we hold 38 Ill.Rev.Stat. § 11–20 is constitutionally valid, and the complaint in No. 70 C 1235 will be dismissed. An order will enter consistent with the foregoing.

## APPENDIX 1

§ 11–20. Obscenity

(a) Elements of the Offense.

A person commits obscenity when, with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature or content thereof, he:

(1) Sells, delivers or provides, or offers or agrees to sell, deliver or provide any obscene writing, picture, record or other representation or embodiment of the obscene: or

(2) Presents or directs an obscene play, dance or other performance or participates directly in that portion thereof which makes it obscene: or

(3) Publishes, exhibits or otherwise makes available anything obscene: or

(4) Performs an obscene act or otherwise presents an obscene exhibition of his body for gain: or

(5) Creates, buys, procures or possesses obscene matter or material with intent to disseminate it in violation of this Section, or of the penal laws or regulations of any other jurisdiction: or

(6) Advertises or otherwise promotes the sale of material represented or held out by him to be obscene, whether or not it is obscene.

(b) Obscene Defined.

A thing is obscene if, considered as a whole its predominate appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the ob-

scenity is latent as in the case of undeveloped photographs.

(c) Interpretation of Evidence.

Obscenity shall be judged with reference to ordinary adults, except that it shall be judged with reference to children or other specially susceptible audiences if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience.

Where circumstances of production, presentation, sale, dissemination, distribution, or publicity indicate that material is being commercially exploited for the sake of its prurient appeal, such evidence is probative with respect to the nature of the matter and can justify the conclusion that the matter is utterly without redeeming social importance.

In any prosecution for an offense under this Section evidence shall be admissible to show:

(1) The character of the audience for which the material was designed or to which it was directed;

(2) What the predominant appeal of the material would be for ordinary adults or a special audience, and what effect, if any, it would probably have on the behavior of such people;

(3) The artistic, literary, scientific, educational or other merits of the material, or absence thereof;

(4) The degree, if any, of public acceptance of the material in this State;

(5) Appeal to prurient interest, or absence thereof, in advertising or other promotion of the material;

(6) Purpose of the author, creator, publisher or disseminator.

(d) Penalty.

A person convicted of obscenity shall for the first offense be fined not to exceed $1,000.00 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both, and for a second or subsequent offense shall be confined in the penitentiary for not less than one year nor more than 3 years, or be fined not less than $1,000.00 nor more than $5,000.00, or both.

(e) Prima Facie Evidence.

The creation, purchase, procurement or possession of a mold, engraved plate or other embodiment of obscenity specially adapted for reproducing multiple copies, or the possession of more than 3 copies of obscene material shall be prima facie evidence of an intent to disseminate.

(f) Affirmative Defenses.

It shall be an affirmative defense to obscenity that the dissemination:

(1) Was not for gain and was made to personal associates other than children under 18 years of age:

(2) Was to institutions or individuals having scientific or other special justification for possession of such material.

Illinois Revised Statute—Chapter 38— § 11-20.

### APPENDIX 2

192.9. It shall be unlawful for any person knowingly to exhibit, sell, print, offer to sell, give away, circulate, publish, distribute, or attempt to distribute any obscene book, magazine, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph, motion picture film, play, image, instrument, statue, drawing, or other article which is obscene. Any person violating any provision of this section shall be fined not less than $20.00 nor more than $200.00 for each offense.

Obscene for the purpose of this section is defined as follows: Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests.

Municipal Code of Chicago § 192.9 (1969).