(No. 40536.—

THE PEOPLE OF THE CITY OF BLUE ISLAND, Appellee, *vs.* KENNETH DeVILBISS, Appellant.

*Opinion filed Nov. 22, 1968.—Rehearing denied Jan. 14, 1969.*

136

WARD, J., took no part.

HOWARD T. SAVAGE, of Chicago, for appellant.

ROMIE J. PALMER, City Attorney, of Blue Island, for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Kenneth DeVilbiss, owner and operator of a bookstore in Blue Island, Illinois, was charged with knowingly exhibiting and selling obscene books in violation of the obscenity ordinance of the city of Blue Island. (City Ordinance No. 1983, sec. 1.2.) Following a bench trial in the circuit court of Cook County, he was found guilty and fined $300 and costs. His appeal is properly before this court because questions arising under the Federal and State constitutions are involved.

Defendant does not contest that obscenity is outside the protection of the constitutional guarantees of free speech or that the distribution of obscene material may be punished criminally. (*Roth* v. *United States,* 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304.) In essence, he contends that neither the obscene quality of the books in question nor

his knowledge of their contents was sufficiently proved by competent evidence. He also attacks the constitutionality of certain sections of the obscenity ordinance, including the section defining obscenity. That section states: "A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the obscenity is latent, as in cases of undeveloped photographs". Defendant asserts this definition is faulty because it omits the qualification announced in *Roth* v. *United States,* 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304, that obscenity "must be utterly without redeeming social importance". This same attack was made upon the Chicago obscenity ordinance and rejected in *City of Chicago* v. *Kimmel,* 31 Ill.2d 202, where on pages 205, 206, the court, quoting from *Roth,* noted that " '* * * [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices' " and that therefore "It would be most unreasonable to require a legislative draftsman to incorporate every nuance of constitutional dictum into a statutory definition". Applying these standards here, we hold that the ordinance definition is constitutionally sufficient. We also note that this definition is identical to the definition set forth in the State obscenity statute (Ill. Rev. Stat. 1967, chap. 38, par. 11—20(b)) which has previously been upheld against constitutional attack based on slightly different grounds. See *People* v. *Sikora,* 32 Ill.2d 260, 262.

Defendant also attacks section 1.4(4) of the ordinance which provides that evidence shall be admissible in a prosecution under the ordinance to show "The degree, if any, of public acceptance of the material in this State." He charges that this "unconstitutionally authorized the trial judge to

find [him] guilty based upon what he believed to be the public acceptance of the material in the State of Illinois." We have previously pointed out that the constitutionality of a State standard as opposed to a national standard, which section 1.4(4) appears to sanction, has not been decided by the United States Supreme Court. (*People* v. *Sikora,* 32 Ill.2d at 264; *Cusack* v. *Teitel Film Corp.,* 38 Ill.2d 53, 68.) In those cases we found it unnecessary to resolve this issue since no evidence of any State standard was offered or received and the trial judge did not appraise the subject material in terms of an exclusively local standard. Because these same facts are present in this case, we again have no need to decide this issue.

Defendant finally charges, with respect to the validity of the ordinance, that it does not make *scienter* an element of the offense proscribed, contrary to the constitutional mandate announced in *Smith* v. *California,* 361 U.S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215. Section 1.2 of the ordinance provides in relevant part: "It shall be unlawful for any person * * * *with knowledge of the nature or content thereof,* to exhibit, sell, * * * obscene [material.]" (Italics supplied.) It is apparent, despite defense counsel's novel interpretation of the italicized language, that this section does make *scienter* an element of the offense proscribed in accordance with constitutional requirements.

Defendant's contention that the element of *scienter, viz.,* his knowledge of the obscene quality of the books in question, was not established requires a review of the evidence on that issue. The four books forming the basis of his conviction were entitled, respectively "Flesh Whip", "Homo Sweet Homo", "Lesbian Lust" and "Any Sex Will Do". Each book cover was illustrated with pictures of partially clad or nude men and women with accompanying descriptive language, designed to appeal to the prurient interest. For example, the cover of "Flesh Whip" pictures a nude girl reclining face down on a pad while a partially-clad girl

hovers over her. The accompanying caption declares "This woman was a savage bull dike, which [sic] ravished girls; in two weeks she could turn them into lesbians with her own burning lips, in a high-priced house she helped run." These books were taken from one side of a four-sided rack in defendant's bookstore; a photograph of this particular side showed that it contained with one exception nothing but similarly illustrated and captioned books, *e.g.,* "Killer-Whore", "Carnival of Lust", "Slut Orgy", *etc.* The price of these books was far in excess of the majority of the paper-backs displayed on the other sides of the rack or on other racks. It was undisputed that defendant was the sole owner of the bookstore and chiefly responsible for placing the paperback books in the display racks.

The arresting officers testified that defendant told them he did not allow his teenage son, who worked part-time in the store, to read these types of books nor to sell them to people under 21. Defendant testified and denied reading the books or having knowledge of their contents. He stated that he placed books on racks solely on the basis of the company which published them; that is, all the books of one publisher were displayed in the same rack.

The trial judge found that there was *scienter,* and in our judgment there is substantial evidence in the record to support this conclusion. It is not consequential that no direct evidence that the defendant read the books was presented since "Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial." (*Smith* v. *California,* 361 U.S. at 154.) The obscene quality of the books was amply evidenced by their covers which defendant had to observe because it was he who placed the books on the racks. Significantly, all the books with such covers were located on the same side of one rack. Defendant expressed his dis-

approval of these types of books to the arresting officers and indicated he would not sell them to minors. Under these facts and circumstances, we hold that the trial judge did not err in holding that *scienter* was established.

We now turn to a consideration of whether or not the books defendant sold are obscene, a task which requires that we make an independent constitutional judgment. (*Jacobellis* v. *Ohio,* 378 U.S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676.) The book "Lesbian Lust" portrays a female photographer who takes pictures of nude young women for distribution to mens' magazines. She invariable engaged in homosexual acts with these models, and the models engage in such acts between themselves. Her main competitor is a male photographer who also competes with much success for the favors of the models, one of whom especially enjoys being beaten by him. The female photographer disposes of her competitor by a blackmail scheme involving photographs of him being sexually assaulted by some of her male homosexual friends.

"Homo Sweet Homo" describes the sexual experiences of a man hired by a strip-tease dancer to persuade her brother to give up his homosexual ways. The man is sexually assaulted by the brother and his homosexual friends, becomes attracted to the brother, joins the homosexual cult, and engages in a variety of sexually-deviate acts with them. However, he retains his attraction for women and has sexual intercourse with the stripper and other women. He ultimately decides to marry the stripper and her brother commits suicide when he learns of this decision.

"Any Sex Will Do" concerns the sexual misadventures of an aspiring Hollywood agent. By dint of his own sexual prowess, he convinces his secretary to "sleep with" an agency head so that he will be appointed manager for a male singer. He wins the job but discovers that it involves satisfying the singer's perverted sexual interests by engaging in deviate acts with him. To re-establish his mascu-

linity, he turns to a woman model who, unknown to him, is the homosexual partner of his secretary. When the latter learns of his unfaithfulness, she castrates him, killing him in the process.

"Flesh Whip" recites the adventures of a young woman who flees to the "big city" after being brutally raped "back home." She falls prey to the lesbian operator of a brothel who, through drugs and beating, attempts to force her into prostitution. She is again the victim of a brutal sexual assault by the bouncer of the brothel. This man is ultimately killed by the girl's boy friend who rescues her from the lesbian's clutches.

The controlling principles in cases of this type, set forth initially in *Roth,* and as later expanded in *Manual Enterprises, Inc.* v. *Day,* 370 U.S. 478, 8 L. Ed. 2d 639, 82 S. Ct. 1432, and *Jacobellis,* were summarized by the United States Supreme Court in *A Book* v. *Attorney General,* 383 U.S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975. The opinion of the court stated: "We defined obscenity in Roth in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 U.S. at 489, 1 L. Ed. 2d at 1509. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418, 16 L. Ed. 2d at 5, 6. The opinion further notes that: "Each of the three federal constitutional criteria is to be applied independently; the social value of the book can neither be weighed against nor canceled by its prurient appeal or patent offensiveness." 383 U.S. at 419, 16 L. Ed. 2d at 6.

Based upon the ordinance definition of obscenity as implemented by the above constitutional criteria, it is our considered opinion that the books described herein are obscene and without constitutional protection. It is not contended that they possess any artistic or literary merit and, in our judgment, they are also totally devoid of any redeeming social value. In common with the books we reviewed and found obscene in *People* v. *Sikora,* 32 Ill.2d 260, 268, "No one of them can be said to represent a serious attempt to discuss any problem that confronts society. They are discussions of sex and perversion, almost totally unrelated to anything else. Such plot and characterization as they contain serve as transitions from one sexual episode, normal, or abnormal, to another." The books are replete with accounts of homosexual acts, masturbation, flagellation, oral-genital acts, rape, voyeurism, masochism and sadism. These accounts can only appeal to the prurient in-interest, and clearly go beyond customary limits of candor in the kinds of conduct described and in the detail of description.

Defendant advances finally a highly technical argument based on the wording of the caption on the complaint filed against him. We need not discuss this argument other than to note that this wording was not objected to at the trial level and therefore may not be raised here.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.