THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES SPEER *et al.*, Defendants-Appellants.

First District (4th Division)   No. 61378

Opinion filed August 25, 1977.

204

Paul C. Ross, of Chicago (John F. Martoccio, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The six defendants, James Speer, Thomas Yates, Morton Weiss, Milton Glass, David Mendenhall and Frank Orlando, were charged by nine complaints with obscenity in that they sold obscene magazines with knowledge of the nature or content thereof. (Ill. Rev. Stat. 1973, ch. 38, par. 11—20.) In separate bench trials each defendant was found guilty as charged. The sentences varied from a $100 fine to one year probation. In this consolidated appeal defendants contend (1) that the magazines in question are not obscene and (2) that the State failed to prove that the defendants knew the nature or contents of the magazines.

## JAMES SPEER

Defendant James Speer was charged with one count of obscenity in that he sold an obscene magazine, "All Day Suckers," to George Carey. At trial Carey, an investigator for the Chicago Police Department, testified as follows: On October 16, 1973, he went to the T. C. Adult Book Store in Chicago. A sign on the front of the store indicated that no one under 21 was allowed to enter. Carey entered, took a copy of "All Day Suckers" from a rack and put it on the check-out counter in front of Speer. Speer asked for $6, which Carey paid. Before leaving Carey again showed the magazine to Speer.

Speer testifed that he was employed as a clerk at the store but had nothing to do with the selection of "books."

The front cover of "All Day Suckers" has explicit color photographs of people engaged in acts of fellatio and intercourse, with emphasis on genitalia. The cover bears a $10 price in print and a $6 price tag. It also bears the following phrases: "Restricted to Mature Adults Over 21 Years of Age," "56 Vivid, Full-Color Photos !," "An Authoritative Pictorial of Oral-Genital & Coital Love." The magazine contains some innocuous text but is primarily comprised of explicit color photographs of people engaged in acts of fellatio, cunnilingus, and sexual intercourse, with extreme close-ups of genitalia.

## THOMAS YATES

Defendant Thomas Yates was charged in three complaints with obscenity. The first complaint charged that he sold an obscene magazine, "Lips and Tongue Sex, No. 4" to Stratford Peterson. At trial Peterson, an investigator for the Chicago Police Department, testified as follows: On June 4, 1973, he entered the Loop News Adult Book Store in Chicago, paying Yates a 50 cents admission fee. Peterson took "Lips and Tongue Sex, No. 4" from a rack, presented it to Yates and paid him for it. Peterson then opened the magazine to the centerfold which contained two color photos and showed it to Yates.

Yates did not testify.

The front cover of "Lips and Tongue Sex, No. 4" has a photograph of a woman holding her exposed breasts and licking one of them. Her legs are spread and the back of a head is visible between them, suggesting that an act of cunnilingus is being performed. The magazine bears a $5 price and the cover has the following printed on it: "The Psychodynamics of Oral Lovemaking," and "Warning: You might find this magazine sexually stimulating!" The centerfold, which Peterson testified he showed to Yates, has two full-page color photographs showing explicit acts of fellatio and cunnilingus, with extreme closeups of genitalia. Along with some innocuous text the magazine contains numerous color and black-and-white photographs of people engaged in acts of fellatio and cunnilingus with extreme closeups of genitalia.

The second complaint charges Yates with the sale of an obscene magazine, "Inquiry, Vol. 3, No. 2" to Stratford Peterson. At trial Peterson testified as follows: On April 5, 1974, Peterson went to the Harrison Book Store, which bears signs identifying it as an adult book store and barring minors. He entered the store and paid Yates a 50 cents admission fee. Peterson took "Inquiry, Vol. 3, No. 2" from a rack, put the magazine face up on the checkout counter manned by Yates, and paid Yates for it. Yates told him in conversation that he didn't allow minors to enter the store and checked numerous identifications.

Yates testified that he was employed as a clerk at the store, had nothing to do with the selection of the "books," "occasionally" looked at the "books," but was not aware of the content of this or any other book.

"Inquiry, Vol. 3, No. 2" has on its cover color photographs showing naked men and women in positions suggesting that acts of fellatio and cunnilingus are being performed. It bears a $6 price and the following phrases: "Bisexuality," "exclusively photo-illustrated," "24 Full-Color Pages," "Educational material for adults only—Sale to minors prohibited." Along with text which purports to be a study of the issue of bisexuality the magazine contains numerous color and black-and-white photographs showing people engaged in acts of fellatio, cunnilingus, sexual intercourse, and bondage, with explicit closeup detail of genitalia.

The third complaint charged Thomas Yates with sale of an obscene magazine, "Sexualis, Vol. 2, No. 1," to Stratford Peterson. At trial Peterson testified as follows: On September 14, 1973, he entered the Harrison Adult Book Store, paid Yates a 50 cents admission fee. Peterson then took "Sexualis, Vol. 2, No. 1" from a rack, brought it to the checkout counter and paid Yates for it. In conversation Yates told Peterson that he would not sell the magazine to minors and that he did not allow people under 21 into the store.

Yates did not testify, but it appears that there was a stipulation that his

testimony at his trial for the sale of "Inquiry, Vol. 3, No. 2" would be the defense for this trial. That testimony was that he was employed as a clerk at the store, "occasionally" looked at the "books," but had nothing to do with their selection and knew nothing of the contents of any of them, including the one in issue.

The cover of "Sexualis, Vol. 2, No. 1" has a large color picture of a man performing what appears to be an act of cunnilingus on a woman whose breasts are bared. The cover bears a $6 price and the following phrases: "Educational Material for Adults Only, Sale to Minors Prohibited," "The Forbidden Pleasure—A realistic look at Oral Sex practices and attitudes," "The American Swing Scene—An Inside Report on Group Sex Activities." Along with textual material purporting to relate to the illustrations, the magazine contains many color and black-and-white photographs of people engaged in acts of cunnilingus, fellatio, sexual intercourse using dildoes, and group sex, all with closeup detail of genitalia.

## MORTON WEISS

Defendant Morton Weiss was charged with one count of obscenity in that he sold an obscene magazine, "The Sex Book, Vol. 3, No. 2" to Stratford Peterson. At trial Peterson testified as follows: On October 16, 1973, Peterson entered the Loop News Adult Books Store, paying a 50 cents admission fee. He took "The Sex Book, Vol. 3, No. 2" from a rack, took it to the check-out counter, opened it to the centerfold, and paid Weiss for it.

Weiss testified that he was employed as the cashier at the store and had nothing to do with the selection of "books."

On its cover "The Sex Book, Vol. 3, No. 2" has the following descriptive phrases: "A photo-study of changing views on sex," "A psychology of the human orgasm," "Exclusively photo-illustrated," "24 Full-Color pages," "Educational material for adults only—sale to minors prohibited." The cover price is $5. The cover bears a single color photograph of a woman with her breasts exposed and her hands in a position suggesting masturbation. Along with textual material on orgasms, the magazine contains numerous color and black-and-white photographs of people engaging in acts of sexual intercourse, cunnilingus, masturbation, and fellatio. The center pages of the magazine have color photographs of people engaging in sexual intercourse and fellatio. The pictures in the magazine focus on genitalia.

## MILTON GLASS

Defendant Milton Glass was charged in two complaints with obscenity. The first complaint alleged that he sold an obscene magazine, "Inquiry, Vol. 3, No. 1," to Stratford Peterson. At trial Peterson testified as follows:

On November 2, 1973, Peterson went into Gill's Book Store. He took "Inquiry, Vol. 3, No. 1" from a rack and brought it to the check-out counter, placing it face up on the counter so Glass could see it. He testified that Glass "looked at it." He then paid Glass for the magazine.

"Inquiry, Vol. 3, No. 1" features on its cover a color photograph of a man and woman licking the breasts of a second woman. It also bears the phrases "sexual trios and quartets," "exclusively photo-illustrated," "24-full-color pages," "educational material for adults only—sale to minors prohibited." The cover price is $5. Along with textual material on group sex, the magazine contains many color and black-and-white photographs of men and women engaging in acts of sexual intercourse, fellatio, and cunnilingus, with closeup detail of their genitals.

The second complaint alleged that Glass sold an obscene magazine, "Sex Scope, Vol. 3, No. 3," to Stratford Peterson. At trial Peterson testified as follows: On November 5, 1973, he entered Martin's Book Store, one wall of which contained adult material. From a magazine rack he took "Sex Scope, Vol. 3, No. 3" and placed it on the counter, opened to the centerfold, then turned it over so Glass could see the price. In conversation Glass told him that he would not sell to minors and that he didn't allow them in the store. Peterson then paid Glass for the magazine.

Glass testified that he was employed as a cashier at the store and had nothing to do with the selection of "books." He said that he "very seldom" read the books; that all he did was to accept cash for them.

Although all nine magazine exhibits were submitted to this court as part of the record on appeal, we have subsequently been unable to locate "Sex Scope, Vol. 3, No. 3" and therefore cannot summarize its contents.

## DAVID MENDENHALL

Defendant David Mendenhall was charged with one count of obscenity in that he sold an obscene magazine, "Linda Lovelace," to Stratford Peterson. At trial Peterson testified as follows: On December 18, 1973, he entered the Howard News Adult Books Store, paying the 50 cents admission fee. He took the magazine "Linda Lovelace" from a rack and took it to Mendenhall at the check-out counter, laying it face up on the counter so Mendenhall could see the cover and price. Mendenhall told Peterson that he did not allow people under 21 in the store. Peterson then paid Mendenhall for the magazine.

Mendenhall testified that he was a cashier-clerk at the store and had nothing to do with the selection of publications, only making sales and bagging purchases. He said that he had worked at the store since July of that year. He sometimes scanned the material he sold to see what was in it. He admitted that by scanning the material he was aware of the type of material in those "books."

"Linda Lovelace" has a $6 cover price and the descriptions "24 full color pages," "for the adult reader," "sale to minors prohibited." The magazine contains some text loosely related to the pornographic-movie actress whose name the magazine bears, but it mainly consists of large color and black-and-white photographs of people engaging in acts of sexual intercourse, cunnilingus, and fellatio. The photographs provide closeup views of genitalia.

## FRANK ORLANDO

Defendant Frank Orlando was charged with one count of obscenity in that he sold an obscene magazine, "U.S. Sex and World Views" to Stratford Peterson. At trial Peterson testified that on January 17, 1974, he entered Abby's Adult Book Store, took a copy of "U.S. Sex and World Views" from a rack and brought it face up to Orlando, paying Orlando for it. In conversation Orlando told Peterson that he did not allow minors in the store.

Orlando did not testify.

The cover of "U.S. Sex and World Views" has photographs of two women kissing, two men kissing, and a woman biting a foot, in poses which suggest acts of lesbianism, male homosexuality, and foot fetishism respectively. The cover bears a $5 price and the phrases "Adult Sex Education Material," "Illustrated." Along with textual material which purports to be an examination of the Report of the President's Commission on Obscenity and Pornography, the magazine contains numerous color and black-and-white photographs of people engaged in acts of fellatio, cunnilingus, homosexual activity, group sex, and sexual acts involving clothes fetishes, all with extreme closeups of genitalia.

### I.

■■ We first consider defendants' contention that the magazines are not obscene. Each magazine was admitted into evidence at trial and determined by the trial judge to be obscene. However we are required to make an independent judgment of whether this material is constitutionally protected. (*People v. Ridens* (1974), 59 Ill. 2d 362, 321 N.E.2d 264, *cert. denied,* 421 U.S. 993, 44 L. Ed. 2d 483, 95 S. Ct. 2000; *Jacobellis v. Ohio* (1964), 378 U.S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676.) The applicable statute provides in relevant part:

"§11-20. *Obscenity.*) (a) Elements of the Offense.

A person commits obscenity when, with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature or content thereof, he:

(1) Sells, delivers or provides, or offers or agrees to sell,

deliver or provide any obscene writing, picture, record or other representation or embodiment of the obscene; or * * *

(b) Obscene Defined.

A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the obscenity is latent, as in the case of undeveloped photographs. * * *." (Ill. Rev. Stat. 1973, ch. 38, par. 11-20.)

Our supreme court has determined that these standards are within the constitutional guidelines of *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607. (*People v. Ridens* (1974), 59 Ill. 2d 362, 321 N.E.2d 264, *cert. denied.* (1975), 421 U.S. 993, 44 L. Ed. 2d 483, 95 S. Ct. 2000; *People v. Ward* (1976), 63 Ill. 2d 437, 349 N.E.2d 47, *affirmed* (1977), ___ U.S. ___, 52 L. Ed. 2d 738, 97 S. Ct. 2085.) In *Ridens* the Illinois supreme court construed the Illinois statute to incorporate the following guidelines from *Miller*: (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; and (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable State law. The court in *Ridens* retained as a third part of the guidelines the test formulated in *Memoirs v. Massachusetts* (1966), 383 U.S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975: whether the material is utterly without redeeming social value. *Ridens* did not explicitly indicate how the Illinois statute comported with the *Miller* requirement that the sexual conduct proscribed from depiction be specifically defined by State law (see Justice Davis' dissent in *Ridens*, 59 Ill. 2d 362, 375; also see *Eagle Books, Inc. v. Reinhard* (N.D. Ill. 1976), 418 F. Supp. 345, *judgment vacated,* ___ U.S. ___, ___ L. Ed. 2d ___, ___ S. Ct. ___.) Indeed, in *Ward*, when the Illinois statute was challenged for lack of this required specificity, the Illinois Supreme Court in upholding the statute seemed to find the specificity in the statutory definition of prurient interest as a "shameful or morbid interest in nudity, sex or excretion" even though this definition was quite similar to that of the California statute found to be constitutionally inadequate in *Miller*. However, this puzzle has been solved by the United States Supreme Court. In affirming *Ward* the United States Supreme Court determined that the Illinois supreme court in *Ridens* intended to adopt the examples of specificity provided in *Miller*. Those examples were: (a) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; and (b) patently offensive representations or descriptions of

masturbation, excretory functions, and lewd exhibition of the genitals. Even these examples were held not to comprise the entire range of sexual conduct whose description or representation is barred by the Illinois statute. The statute was to be limited to those "kinds" of activities. Thus in *Ward* itself sado-masochistic materials were held to be within the purview of the statute despite the absence of an explicit reference to them in the *Miller* examples.

■■ The present obscenity guidelines in this State, in the light of the United States Supreme Court interpretation of Illinois case law in *Ward,* are:

> (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion;
>
> (b) whether the work depicts or describes, in a patently offensive way, sexual conduct of the kind cited in the following examples:
>
>> 1. patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated;
>>
>> 2. patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.
>
> (c) whether the material is utterly without redeeming social value.

■■ We have previously noted that one of the magazines which defendant Glass was charged with selling, "Sex Scope, Vol. 3, No. 3," has not been available for our review, though it was submitted as part of the record on appeal to this court. Ordinarily when the record on appeal is incomplete the reviewing court bases its decision on every reasonable presumption favorable to the judgment from which the appeal is taken, resolving any doubts arising from the incompleteness in favor of that judgment. (*People v. Benford* (1975), 31 Ill. App. 3d 892, 335 N.E.2d 106; 2 Ill. & Prac. *Appeal and Error* §713 (1953).) However, this is based on the appellant's failure to carry out his responsibility to preserve the record on appeal. (*People v. Johnson* (1976), 42 Ill. App. 3d 425, 355 N.E.2d 699.) In this cause defendants did properly preserve the record on appeal. We also note that because we are reviewing convictions for obscenity we are specially charged with the duty to make an independent evaluation of the material alleged to be obscene. Because we are unable to make that required independent evaluation of "Sex Scope, Vol. 3, No. 3," through no fault of defendant Glass, we reverse his conviction for the sale of that magazine.

■■ We have described the contents of the other magazines at issue.

The language of a recent Illinois appellate court decision in which other magazines were found to be obscene exactly described these magazines: "The magazines graphically depict sexual intercourse, masturbation, fellatio, cunnilingus, group sex and other varieties of sexual activity with emphasis typically focused on the genitals." (*People v. Tannahill* (1976), 38 Ill. App. 3d 767, 771, 348 N.E.2d 847, 851.) Taken as a whole, applying community standards as exemplified in *Tannahill, Ridens* and *Ward,* these magazines appeal to a morbid interest in nudity and sex. In their photographs they explicitly portray in a patently offensive manner ultimate sexual acts. These photographs include the lewd exhibition of human genitalia. The magazines are utterly without redeeming social value despite the inclusion of some innocuous text of an allegedly educational, literary, historical or sociological nature. (*City of Chicago v. Allen* (1975), 26 Ill. App. 3d 502, 327 N.E.2d 414; *City of Chicago v. Geraci* (1970), 46 Ill. 2d 576, 264 N.E.2d 153.) These publications are therefore obscene.

## II.

■■ Defendants also contend that there was no proof establishing that they had knowledge of the nature and contents of the magazines they sold. As was stated by the United States Supreme Court in *Smith v. California* (1959), 361 U.S. 147, 154, 4 L. Ed. 2d 205, 212, 80 S. Ct. 215, 219, "* * * [e]yewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained * * *." Illinois case law is in accord. Thus in upholding the convictions for obscenity of two owner-operators of adult book stores who had not been present at the sale of some of the magazines in issue, the Illinois appellate court held that *scienter* could be inferred in part from the fact that the magazines in the store were arranged and priced according to sexual explicitness. (*People v. Tannahill* (1976), 38 Ill. App. 3d 767, 348 N.E.2d 847.) The Illinois Supreme Court has affirmed the conviction of a store owner for obscenity under a municipal ordinance where *scienter* was inferred from the fact that the defendant had seen the covers of the books in placing them on a rack which contained only books with similar illustrations and titles on their covers. (*City of Blue Island v. DeVilbiss* (1968), 41 Ill. 2d 135, 242 N.E.2d 761.) The obscenity conviction of a bookseller has been upheld under a preponderance of the evidence standard in another municipal ordinance case where as to one of the magazines in issue *scienter* was inferred from the pictures on the front and back cover and the words "Adults Only" along with the fact that the defendant personally sold it. (*City of Chicago v. Doe* (1964), 47 Ill. App. 2d 460, 197 N.E.2d 711.) Most recently, in an

Illinois appellate court case involving almost identical facts, a conviction was upheld as to one defendant where the only evidence was that the defendant sold a specified magazine to a police officer for $5. The court found that in order for the defendant to have made the sale he must have looked at the cover to determine the sale price. The cover contained the phrases, "Adults Only," "Sale to Minors Forbidden," and "This Guide Contains Photo Illustrated Educational Material Dealing with Sex." It also contained a large black-and-white photograph of a young male and female apparently naked, lying together in the grass. The court found that defendant's knowledge of the contents of the magazine could be inferred from his looking at this cover. Knowledge on the part of other defendants who had sold magazines was also inferred from the sale together with the contents of the covers, but the court pointed to evidence that these defendants were shown specific pages containing obscene pictures and that they told the officers that they would not sell these magazines to minors. (*People v. Glass* (1976), 41 Ill. App. 3d 43, 353 N.E.2d 214.) In other jurisdictions *scienter* in the sale of obscenity has been inferred from evidence that a clerk saw the cover and one inside page of a magazine (*State v. Hull* (1976), 86 Wash. 2d 527, 546 P.2d 912); evidence that an officer showed a clerk the front and back covers of a magazine where the covers had explicit photographs of sexual activity along with a $10 price (*State v. Ward* (Mo. App. 1974), 512 S.W.2d 245); and sale by a clerk of a magazine whose front and back covers, especially in the light of their descriptive titles would create an inference as to the nature of their contents. *State v. American Theatre Corp.* (1975), 193 Neb. 289, 227 N.W.2d 390.

■■ We have described the circumstances of the sales of the eight magazines still at issue, including the nature of the covers of all of them, as well as the contents of pages which testimony indicated were shown to some of the defendants. In making these sales the defendants must have been aware of the nature of the covers of the magazines they sold as well as their high prices. The trial judge was justified in inferring from these facts alone that the defendants were aware of the nature and contents of the magazines they sold. This inference is further supported as to some of the defendants by the fact that some worked in stores clearly labelled adult book stores, some stated that they would not sell to minors, and some were shown pages of the magazines containing pictures of explicit sexual activity. We hold that at trial it was proven beyond a reasonable doubt that the defendants were aware of the nature and contents of the magazines they were charged with selling.

For the foregoing reasons, the conviction of defendant Glass for the sale of "Sex Scope, Vol. 3, No. 3" is reversed. The remaining judgments of the trial court as to all six defendants are affirmed. Defendant Glass' $100

fine, levied at trial for two convictions, is affirmed as to the remaining conviction.

Affirmed in part; reversed in part.

DIERINGER, P. J., and JOHNSON, J., concur.