THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES ANDERSON, Defendant-Appellant.

Second District   No. 83—572

Opinion filed January 23, 1985.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Diana Fischer-Woods, Assistant State's Attorney, and Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Charles Anderson, appeals from his conviction in the circuit court of Du Page County after a jury trial on two counts of obscenity in violation of section 11—20 of the Illinois Criminal Code of 1961. (Ill. Rev. Stat. 1981, ch. 38, par. 11—20.) Defendant contends that the two magazines sold by his employee were not obscene as a matter of law beyond a reasonable doubt, that the State failed to prove defendant possessed the requisite scienter for his obscenity conviction, and that the trial court erroneously interpreted the law, thereby necessitating remandment for resentencing. Because we conclude the trial court committed no reversible errors, we affirm defendant's conviction.

Defendant, the owner and sole proprietor of Villa Park Bookstore,

was charged in a nine-count indictment "with having recklessly failed to exercise reasonable inspection which would have disclosed" that certain magazines sold at his bookstore were obscene. Also indicted and tried with defendant was his employee and store clerk, Frank L. Rivera.

The jury trial was conducted on January 18-19, 1983. The State elected to bring prosecution on only four counts based upon the sale of four different magazines. Proofs were submitted by stipulation and included the admission of the magazines into evidence. After the stipulation was read to the jury, the trial court denied defendant's motion for a directed verdict.

On the basis of the stipulation and the magazines admitted as exhibits, the jury returned guilty verdicts as to two counts but acquitted defendant on two other counts. The trial court entered judgment on the verdicts and on May 19, 1983, after hearing argument in aggravation and mitigation, sentenced defendant to four months in the county jail on each count, with the sentences to run concurrently. The court also imposed a $1,000 fine on one count. Defendant on June 17, 1983, filed a timely notice of appeal.

Defendant first argues that the two magazines which are the basis of this action are not obscene as a matter of law. Each magazine was introduced into evidence and determined by the jury to be obscene. However, this court is required to make an independent judgment as to whether the material is constitutionally protected. *Jacobellis v. Ohio* (1964), 378 U.S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676; *People v. Ridens* (1974), 59 Ill. 2d 362, *cert. denied* (1975), 421 U.S. 993, 44 L. Ed. 2d 483, 95 S. Ct. 2000.

The Illinois statute on obscenity provides in relevant part:

"A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor and description or representation of such matters." (Ill. Rev. Stat. 1981, ch. 38, par. 11—20(b).)

The United States Supreme Court in *Ward v. Illinois* (1977), 431 U.S. 767, 52 L. Ed. 2d 738, 97 S. Ct. 2085, construed this statute as constitutional and concluded the examples of obscenity recited in its earlier decision in *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, were intended by the Illinois Supreme Court in *Ridens* to be incorporated into the Illinois statute. (*Ward v. Illinois* (1977), 431 U.S. 767, 775, 52 L. Ed. 2d 738, 747, 97 S. Ct. 2085, 2090.) After considering United States Supreme Court interpretations

of Illinois case law, our appellate court has articulated the present obscenity guidelines in this State as follows:

"(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion;

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct of the kind cited in the following examples:

1. patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated;

2. patently offensive representations or descriptions of masturbation, excretory functions and lewd exhibition of the genitals.

(c) whether the material is utterly without redeeming social value." *People v. Speer* (1977), 52 Ill. App. 3d 203, 211, 367 N.E.2d 372, 377.

Acknowledging that these guidelines govern this appeal, defendant asserts as one of first impression the question whether the magazines here, depicting bondage scenes, constitute obscenity under the Illinois statute. Our review of the case law confirms defendant's assertion that no Illinois court has answered the specific question whether magazines depicting women in bondage without more are obscene. However, under analogous circumstances, both the United States Supreme Court and Illinois courts have ruled that sadistic and masochistic publications are obscene.

■ Defendant makes essentially two arguments with regard to these rulings. First, he contends that bondage is not fairly included within the definition of sadism or sadomasochism. We disagree. Sadism is defined as follows:

"The obtaining of satisfaction, even sexual pleasure, from hurting another. A species of insanity or mental disease in which the sexual instinct of the patient is abnormal or perverted." (Ballantine's Law Dictionary 1132 (3d ed. 1969).)

Bondage is "a state of being bound, usually by compulsion." (Webster's New Collegiate Dictionary 124 (1979).) The clear intent and effect of these publications is to excite the sexual interest of the readers through the pain caused or simulated when the women represented in these magazines are restrained by ropes. The bondage represented here, which depicts discomfort and pain experienced by the bound women, is fairly characterized as a form of sadism. (See *United States v. Ewing* (10th Cir. 1971), 445 F.2d 945, *vacated* (1973),

413 U.S. 913, 37 L. Ed. 2d 1022, 93 S. Ct. 3031 (where publications emphasizing bondage were labeled sadomasochistic material and where expert testimony indicated bondage was a subclassification of sadomasochism).) Defendant's citation to one commentator's conclusion that the United States Supreme Court intended bondage and sadomasochism to be considered as distinct medical categories of deviance (see F. Schauer, The Law of Obscenity 78 (1976)) does not require this court to conclude that these bondage magazines are not obscene, for as defendant even acknowledges, the common definition of sadomasochism includes the term bondage. In addition, one case cited by that commentator as having considered the constitutionality of sadomasochistic materials actually employed the terms "bondage" and "sadomasochism" interchangeably. *United States v. Ewing* (10th Cir. 1971), 445 F.2d 945, *vacated* (1973), 413 U.S. 913, 37 L. Ed. 2d 1022, 93 S. Ct. 3031.

Defendant's reliance on three foreign jurisdiction statutes which define sadomasochistic abuse actually undercuts his contention that sadomasochism and bondage are distinct terms for purposes of obscenity analysis. Both the New York and Pennsylvania statutes define "sadomasochistic abuse" to mean "flagellation or torture by or upon a person clad in undergarments, a mask or bizarre costume, *or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed."* (Emphasis added.) (N.Y. Penal Law sec. 235.20(5) (McKinney 1980); Pa. Stat. Ann. tit. 18, sec. 5903(e)(5) (Purdon 1983).) Florida's statute includes the additional requirement that the person bound and fettered also be subjected to flagellation or torture. (Fla. Stat. Ann. sec. 847.0125(1)(e) (West Supp. 1983).) Despite defendant's contention that the bondage magazines here could never be included within these definitions of sadomasochistic abuse, we conclude to the contrary that these magazines would be considered obscene under these statutes. The scantily clad women in both magazines are bound, fettered, and physically restrained, and some pictures depict the women tortured through use of clothespins and surgical clamps.

Another reason these statutes are unsupportive of defendant's position is that the New York and Florida statutes regulate the display and dissemination of indecent materials to *minors*. When the indictment was filed and throughout defendant's trial, Illinois had in force an almost identical child pornography statute. (Ill. Rev. Stat. 1981, ch. 38, par. 11—20a(a)(2)(D), *repealed by* Pub. Act. 83—472, effective January 1, 1984.) Defendant argues the inconsistent positions that while the definitions of sadomasochism in the foreign-jurisdiction pornogra-

phy statutes support his contention that simple bondage magazines are not obscene, the State's reliance on nearly identical language in the Illinois child pornography statute is inapposite because that statute's overbroad definitions are designed to protect the special interests of children. For these reasons, defendant's citation to these foreign jurisdiction statutes is unpersuasive.

Defendant's second argument in support of his conclusion that these bondage magazines are not obscene is that other cases which have ruled sadomasochistic publications obscene are distinguishable. In *Mishkin v. New York* (1966), 383 U.S. 502, 16 L. Ed. 2d 56, 86 S. Ct. 958, the court considered whether certain books, including some which depicted "such deviations as sado-masochism," were obscene. The New York statute upon which the prosecution was brought proscribed in part any "sadistic, masochistic, or disgusting book ***." (383 U.S. 502, 503 n.1, 16 L. Ed. 2d 56, 59 n.1, 86 S. Ct. 958, 960 n.1.) Based upon the fact that New York courts had interpreted the terms sadistic and masochistic to be synonymous with the term obscene, the *Mishkin* court rejected the defendant's contention that the terms in the State statute were impermissibly vague. The Court further held that the materials were obscene.

The constitutionality of sadomasochistic publications was again addressed by the Court in *Ward v. Illinois* (1977), 431 U.S. 767, 52 L. Ed. 2d 738, 97 S. Ct. 2085. In *Ward*, the defendant was found guilty of violating the Illinois obscenity statute for publishing two magazines, "Bizarre World" and "Illustrated Case Histories, A Study of Sado-Masochism." The court held that "[m]aterials such as these, which by title or content may fairly be described as sado-masochistic" were properly found by the Illinois courts to be obscene. In reaching this conclusion, the *Ward* court relied upon three Illinois Supreme Court decisions wherein sadomasochistic materials had been ruled obscene. In *People v. Sikora* (1965), 32 Ill. 2d 260, the court affirmed an obscenity conviction based upon three books, at least one of which contained a scene "characterized by sadism and masochism." (32 Ill. 2d 260, 268.) Also relied upon by the *Ward* court was *People v. DeVilbiss* (1968), 41 Ill. 2d 135, where the Illinois Supreme Court affirmed the defendant's obscenity conviction based upon books which were "replete with accounts of *** masochism and sadism." (41 Ill. 2d 135, 142.) Finally, the *Ward* court cited *City of Chicago v. Geraci* (1970), 46 Ill. 2d 576, wherein the court held obscene one sadomasochistic magazine which it described as follows:

> " 'Mixmates' is a sado-masochistic magazine which contains photographs portraying lesbianism, rape, whippings, beatings,

bondage, axing, and other abnormal sexual conduct. The pictures, almost without exception, depict scenes of excessive violence and brutality. Nearly naked women are shown being whipped, chained, tortured, and otherwise abused. In some pictures, a substance which appears to be blood is smeared on the bodies of the female models, and in other pictures the models appear to be screaming." (46 Ill. 2d 576, 581-82.)

The *Geraci* court also ruled obscene one book depicting sadistic and masochistic conduct. More recently, our appellate court has ruled that a book which contained vivid and detailed descriptions of sexual encounters, including sadism, was obscene. See *People v. Rota* (1973), 9 Ill. App. 3d 754, 292 N.E.2d 738.

Defendant contends these decisions of the United States Supreme Court and Illinois courts are inapposite because in each case, the courts were presented with sexual conduct far more varied and extreme than the simple bondage presented in these magazines. While defendant is correct that in none of these cases previously discussed was a court required to decide whether bondage scenes alone were obscene, this fact does not necessitate the conclusion that the publications here are not obscene. We review these magazines independently to determine if they are obscene.

The front cover of "Black Bondage" contains the captions "Humbled, bound, gagged and beaten, they struggle to get free of their captors ***" and "Their big, black boobs bulged under the tension of the clothespins ***." Three women are featured on the cover, each tied up with rope in an elaborate system of knots. One woman is gagged with a scarf. Inside, the magazine contains six stories with pictures and text about women who are forced to submit to bondage. Typical is "Circle of Pain," wherein a male acquaintance, without the female victim's consent, binds and gags her and then proceeds to spank the woman numerous times on her naked buttocks "until her moans turned into sounds of weeping." The article describes the tight ropes biting into her flesh, while the male responsible for binding her with rope has intercourse with her. The pictures accompanying the text are very graphic, displaying the women totally naked and bound with ropes in various positions which clearly display their breasts, buttocks and vaginas. In several other photographs in "Black Bondage" the bound women appear to be screaming or attempting to scream, and in others, the women's breasts are squeezed tightly by rope knots and their mouths are forced shut with either a surgical clamp or a clothespin. In at least one picture, the woman's vagina is clamped with a clothespin.

The cover of the second magazine, "Bondage and Discipline Quarterly," contains a picture of a woman blindfolded, gagged, and tied with ropes to the chair with her legs forcibly spread, causing her vagina to be clearly visible. The magazine contains three stories with the common theme conveyed through text and photographs that women are taught to respect their men through their bondage experience. Illustrative is "Turnabout For A Tease," wherein the woman learns "a valuable but painful lesson" for teasing a man. The text relates that the woman, while tied up, becomes sexually aroused despite the "bounds [sic] cut[ting] into her flesh." The pictures contain close-up views of the woman's vagina, buttocks and breasts while she is gagged and bound against a chair or on the floor by rope. None of the pictures in this latter magazine shows the woman tortured with clothespins or other clamp-like devices.

Defendant contends these magazines are not obscene because they do not depict the women engaged in sexual activity. While defendant is correct that all but several pictures show only one person, the woman in bondage, and thus do not depict any sexual activity, the text clearly in "Black Bondage" describes the sex acts, including fellatio and intercourse, which occur between the male and his bound female while she is incapable of moving because of the elaborate system of knots. The text and pictures taken together in "Black Bondage" constitute patently offensive descriptions of ultimate sex acts. (*People v. Speer* (1977), 52 Ill. App. 3d 203, 211, 367 N.E.2d 372, 377.) The text in "Bondage and Discipline Quarterly" is far less graphic, basically describing each woman as "hot," "eager for the first man who crossed her path," "hot and bothered and eager to get it on," and "want[ing] desperately to relieve the hot ache between her legs." In another passage, the woman is tied to a coffee table, and the captor invites friends over to view the bound woman, who "felt herself growing more excited as she thought about the men who would be viewing her. She licked her lips as she imagined how glorious the night would be." Despite the less graphic and less descriptive text in "Bondage and Discipline Quarterly," its pictures and text, when considered together, suggest imminent sexual activity, including ultimate sex acts, and are obscene.

Defendant's further attempt to distinguish this case from other sadomasochistic material on the basis that the instant photographs do not depict the women as an object of another's gratification is simply inaccurate. At least the dominant purpose, if not the sole purpose, of these texts and photographs of the two magazines, taken as a whole, is to depict the women in bondage as the objects of their

captors' gratification. Likewise, defendant's attempt to distinguish these magazines from the publications considered in *City of Chicago v. Geraci* (1970), 46 Ill. 2d 576, and *People v. Rota* (1973), 9 Ill. App. 3d 754, 292 N.E.2d 738, on the basis that the publications in the latter cases contain more extreme and varied violence and brutality, is unpersuasive. Pictures in both magazines in the case at bar show women in pain caused by rope knots and wooden and metal clamp-like devices placed on the women's breasts, lips, and vaginas. In other cases, women are tied in uncomfortable positions, and at least one woman appears to have bruises on her legs and breasts. These pictures constitute sufficient representations of violence and brutality to warrant a finding of obscenity, and this conclusion is not rendered erroneous because other cases considered magazines portraying conduct even more violent than is present here.

■ As a subsidiary argument to his contention that these magazines are not obscene, defendant recites the rule enumerated in *Mishkin v. New York* (1966), 383 U.S. 502, 16 L. Ed. 2d 56, 86 S. Ct. 958, that "[w]here the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement of the *Roth* test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group." (383 U.S. 502, 508, 16 L. Ed. 2d 56, 62, 86 S. Ct. 958, 963.) Defendant argues that the text and pictures in these two magazines are too tame to excite the prurient interest of members of the group which these magazines are designed to service. The *Mishkin* court adopted this "exception" to rebut the defendant's argument, in that case that magazines depicting deviant sexual practices such as flagellation and lesbianism did not arouse the prurient interest of the average viewer, but instead disgusted and sickened him. Employing this average person/deviant group standard, the *Mishkin* court found the material obscene.

We conclude for two reasons that the *Mishkin* exception, rather than aiding defendant, supports our conclusion that the books here are obscene. First, several of the pictures showing surgical clamps and clothespins placed on the female's breasts or vagina might not arouse the average person, but very likely would stimulate the average member of the sadomasochism deviant group. Second, while defendant may be correct that these magazines are less violent than other magazines published for this deviant group, they contain enough images of bondage, domination and submission to arouse the prurient interests of the average members of the deviant group. Because of the members' propensity to be excited by sadomasochistic scenes,

they might not need excessive violence to arouse their prurient interests. Therefore, we find unpersuasive defendant's contention that the two magazines here are too innocuous to arouse prurient interest in the average member of the group to which these magazines are targeted.

Defendant does not contend that these magazines contain any redeeming social value. We agree that they are utterly without redeeming social value, and therefore, the third obscenity criterion in Illinois is satisfied.

Defendant next contends that the State failed to prove beyond a reasonable doubt the requisite scienter for the obscenity offense. The statute requires that a person commits obscenity when "with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature or content thereof, he sells *** any obscene writing ***." (Ill. Rev. Stat. 1981, ch. 38, par. 11—20(a)(1).) Scienter is required "because without it a bookseller could be safe only if he engaged in self-censorship, which might impede the distribution of nonobscene books." (*People v. Sikora* (1965), 32 Ill. 2d 260, 267.) However, in cases such as the one at bar where the bookseller specializes in a particular type of book, and therefore knows the type of books he is selling, the self-censorship danger is minimal. *People v. Sikora* (1965), 32 Ill. 2d 260; *Smith v. California* (1959), 361 U.S. 147, 154, 4 L. Ed. 2d 205, 211-12, 80 S. Ct. 215, 219.

The State must prove scienter. (*People v. DeVilbiss* (1968), 41 Ill. 2d 135.) Here, the State charged defendant "with having recklessly failed to exercise reasonable inspection which would have disclosed" that certain magazines sold at his bookstore were obscene. (Ill. Rev. Stat. 1981, ch. 38, par. 11—20(a)(1).) The State's theory at trial was that defendant was accountable for the conduct of codefendant Rivera, his employee. The trial judge instructed the jury that the State was required to prove that "defendants [*sic*] or one for whose conduct he is legally responsible sold an obscene magazine" and "that the defendant or one for whose conduct he is legally responsible recklessly failed to exercise reasonable inspection which would have disclosed the nature of the magazine." Apparently, the State employed the accountability theory because Rivera actually sold the magazines, the State relying on the general rule of accountability that a person may be responsible for the actions of the other "without actually participating in the overt act or acts" which constitute the offense. *People v. Schlig* (1983), 120 Ill. App. 3d 561, 570, 458 N.E.2d 544, 551.

Both parties at trial entered into a stipulation which contained the

following relevant facts: (1) defendant was the owner and sole proprietor of the store and lessee of the premises; (2) the bookstore dealt solely in sexually explicit materials; (3) defendant throughout this period (presumably when these two magazines were purchased) was "regularly present in person" at his bookstore; (4) defendant had knowledge of the nature of the store's merchandise; (5) the magazines which formed the basis of this action were sold with covers exposed, at prices indicated on the covers, while encased in plastic which prevented examination of the contents until after purchase; (6) the store's windows were covered to prevent observation of the interior from a public way; (7) outside signs prohibited persons under 21 years of age from entering and described defendant's place of business as an adult bookstore open 24 hours; and (8) the policeman purchased the subject magazines from defendant's employee, Frank Rivera. Defendant contends that these facts in light of Illinois case law do not establish the requisite scienter, citing the rule that "[e]very publication or film found in an establishment limited to adult patronage, upon payment of an admission fee at certain times, and charging high prices may not be presumed to be obscene." *People v. Hart* (1981), 101 Ill. App. 3d 343, 351, 427 N.E.2d 1352, 1359.

The State responds that the facts here demonstrate defendant was proved to possess scienter. One important fact emphasized by the State is that the magazines were sold with the covers exposed. The front cover of "Bondage and Discipline Quarterly" shows a woman with her hands raised in pain or fear bound by an elaborate system of knots with her vagina and breasts exposed. The magazine's back cover is a photograph of a woman with her feet and hands tied to a chair, her mouth gagged, and her vagina and breasts exposed. The front cover of "Black Bondage" also shows three women, each with their breasts bound and one with her mouth gagged and teeth clenched and her breasts so tightly roped that the ends of her breasts are grossly distended. The magazine's back cover contains 12 separate pictures displaying women's breasts, vaginas and buttocks, and advertises "12 EROTIC FILMS FOR THE S&M CONNOISSEUR." The text relates that one film portrays "a female slave punished with an enema solution and then sodomized to climax." The films are touted as "reality" and not "pretense" and as portraying "[l]eather bondage that will make you cringe. You've never seen it so violent *** so real *** so tough *** so vivid. You'll feel that you're really part of the action." These magazine covers are evidence that defendant, through his employee, was aware of the contents of the magazines. Furthermore, the magazine "Black Bondage" contains the

words "Adults Only" on the cover, which even defendant concedes is suggestive that Rivera and thus defendant were aware of the obscene nature of the magazine. *City of Chicago v. Doe* (1964), 47 Ill. App. 2d 460, 197 N.E.2d 711.

Defendant rejoins that the mere facts that defendant owned the bookstore, was present when the magazines were purchased, and further that the store's signs advised the public that admission was limited to patrons 21 years of age and older, are wholly insufficient to permit the inference of scienter. However, while each of these facts alone may be insufficient, considered together they warrant an inference of scienter.

Both defendant and the State rely upon *People v. Rode* (1978), 57 Ill. App. 3d 645, 373 N.E.2d 605, and *People v. Tannahill* (1976), 38 Ill. App. 3d 767, 348 N.E.2d 847, to support their respective positions. In *Rode*, the court affirmed the trial court's finding of the clerk's scienter based upon the facts that the clerk had viewed the cover of the magazine, had worked in the store for two months, had stated to the police officer that he would not sell the magazine to a minor, and because of the premium charged for the magazine. Similarly, the clerk here viewed the magazine covers, and each magazine carried a $6 cover price which represents a premium over what is customarily charged for magazines. Furthermore, defendant here was not merely a clerk who had been working for two months, but rather was the owner of the store.

In *People v. Tannahill* (1976), 38 Ill. App. 3d 767, 348 N.E.2d 847, the court affirmed a finding of scienter regarding the owner of the store, who was not even present at the store when the magazines in question were sold. That court reasoned:

> "It is hardly conceivable that the operators of a store specializing in salacious books would not be aware of the contents of those books, especially where the magazines are clearly arranged and priced according to their sexual explicitness." (38 Ill. App. 3d 767, 772, 348 N.E.2d 847, 851-52.)

Attempting to distinguish *Tannahill*, defendant asserts the record here contains no evidence that the magazines were displayed according to their sexual explicitness. However, the bookstore in *Tannahill* was divided into three parts, with the first part containing nonobscene materials (*i.e.*, comics and off-color magazines). The *Tannahill* court focused on the segregation of the "more risque" materials in the second part of the room as indicative of the owner's scienter. Here, as defendant admitted in the stipulation, the Villa Park Bookstore dealt solely in sexually explicit material, thereby making unnec-

essary the segregation of sexually explicit magazines from those which were not. Therefore, the absence of any evidence in this record that the magazines were grouped according to sexual explicitness does not support defendant's conclusion that scienter was not proved. Furthermore, courts are permitted to infer scienter more easily when the bookseller deals exclusively in sexually explicit material, because such a bookseller would not likely engage in self-censorship. *People v. Sikora* (1965), 32 Ill. 2d 260, 267.

Additional facts present here which were not present in *Tannahill* and which are indicative of defendant's scienter are that defendant was on the premises when the sales were made and that defendant stipulated he had knowledge of the nature of the merchandise in the store. The stipulated facts that the windows were covered to prevent observation from a public way and that the store's signs described the establishment as an adult bookstore and limited admission to patrons over 21 years of age also are suggestive of defendant's scienter. Therefore, the trial court record contained sufficient evidence to establish that defendant was proved beyond a reasonable doubt to have violated section 11—20 (Ill. Rev. Stat. 1981, ch. 38, par. 11—20).

■ Defendant's final contention is that the trial court misapprehended the law when it sentenced defendant to serve four months in the county jail and to pay a fine. At the May 14, 1983, sentencing hearing, the trial court stated:

> "Very candidly, if periodic imprisonment were available, I would consider periodic imprisonment, but periodic imprisonment is not available either through the State or through the County.
>
> That being not available, it just cannot be.
>
> Therefore, as far as it being some greater period of time insofar as periodic imprisonment is concerned, I am imposing a lesser sentence of four months which is called straight time of incarceration."

Defendant cites section 5—5—3(b)(2) of the Uniform Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3(b)(2)) as authorizing periodic imprisonment for this misdemeanor conviction. Implicitly, the State concedes that periodic imprisonment is legally available for this offense because it does not argue that periodic imprisonment is unavailable as a proper sentencing alternative here. Rather, the State argues solely that the judge was not referring to the *legal unavailability* of periodic imprisonment, but instead to the fact that "the State and the county are unable to provide the facilities to implement a program of periodic imprisonment."

The sentencing statute reveals no reason why periodic imprisonment was legally unavailable as a sentencing alternative. The crime of obscenity is a Class A misdemeanor. (See Ill. Rev. Stat. 1981, ch. 38, par. 11—20(d).) Section 5—5—3(b)(2) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3(b)(2)) prescribes that periodic imprisonment is available for all felonies and misdemeanors except those contained in section 5—5—3(c) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3(c)). Because Class A misdemeanors are not mentioned in section 5—5—3(c), periodic imprisonment is a sentencing alternative for that offense.

Defendant relies upon *People v. Cross* (1979), 77 Ill. 2d 396, wherein the court remanded for resentencing the defendant's drug conviction because of the trial judge's misapprehension that he was precluded from imposing a term of periodic imprisonment and felt compelled to impose a four-year minimum sentence. The court concluded that the trial judge had incorrectly applied the more recent amendment to the statute which precluded periodic imprisonment as a sentencing alternative for certain violations of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1401 *et seq.*).

*Cross* is distinguishable in that there, the trial judge's action could not be interpreted in any way other than as a misapprehension of the law. Here, the State's interpretation, that there were currently no facilities available for periodic imprisonment, is supported by the trial court's reference to the unavailability of periodic imprisonment in the *county* as well as the *State*, because the unavailability of periodic imprisonment as a matter of law would be determined only by State statute. The practical unavailability of periodic imprisonment facilities, however, would be affected by decisions made at the county level of government. Our reading of the record convinces us that the trial judge was referring not to the legal, but rather to the practical unavailability of periodic imprisonment facilities. Therefore, a remand for resentencing is unnecessary.

Defendant's conviction in the circuit court of Du Page County is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.